**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  23-CV-02028-LLA |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.      Legal Standard ...................................................................................... 2

II.     The Redacted Information is Covered by Exemptions 6, 7(C), (E), and (F). .................... 3

        A.      The Manpower Information and Identifying Information Fall Under Exemptions 7(E) and (F). ........................................................................ 4

        B.      The Identifying Information Falls Under Exemptions 6 and 7(C). ...................... 9

III.    The Government Complied with the Foreseeable Harm Standard in the FOIA Improvement Act of 2016. ....................................................................... 13

IV.     The Government Released All Reasonably Segregable Information. ............................. 14

# TABLE OF AUTHORITIES

**Cases**

*Adionser v. Dep't of Just.*,
   33 F. Supp. 3d 23 (D.D.C. 2014) ........................................... 8

*August v. FBI*,
   328 F.3d 697 (D.C. Cir. 2003) ............................................. 2

*Boehm v. FBI*,
   948 F. Supp. 2d 9 (D.D.C. 2013) ......................................... 10

*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) ............................................ 4, 8

*Campbell v. Dep't of Just.*,
   164 F.3d 20 (D.C. Cir. 1998) ............................................. 4

\* *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*,
   525 F. Supp. 3d 181 (D.D.C. 2021) .................................. 5, 6, 7

*Ctr. for Med. Progress v. U.S. Dep't of Health & Hum. Servs.*,
   No. CV 21-642(BAH), 2022 WL 17976633 (D.D.C. Nov. 16, 2022) ...........11

*Comm. for Freedom of the Press v. U.S. CBP*,
   567 F. Supp. 3d 97 (D.D.C. 2021) ........................................ 13

*Ctr. for Med. Progress v. U.S. Dep't of Health & Hum. Servs.*,
   No. CV 21-642 (BAH), 2022 WL 4016617 (D.D.C. Sept. 3, 2022) ........11, 12

*Ecological Rts. Found v. EPA*,
   541 F. Supp. 3d 34 (D.D.C. 2021) ........................................ 13

*Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*,
   386 F. Supp. 3d 34 (D.D.C. 2019) .................................... 9, 10, 11

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ...................................................... 2

\* *Jud. Watch, Inc. v. Food & Drug Admin.*,
   449 F.3d 141 (D.C. Cir. 2006) ...................................... *passim*

*Jud. Watch, Inc. v. U.S. Dep't of State*,
   875 F. Supp. 2d 37 (D.D.C. 2012) ........................................ 9

*Kurdyukov v. U.S. Coast Guard*,
   578 F. Supp. 2d 114 (D.D.C. 2008) .................................... 13, 14

*Leopold v. CIA*,
106 F. Supp. 3d 51 (D.D.C. 2015) ........................................................................... 3

*Louise Trauma Ctr LLC v. U.S. Dep't of Homeland Sec.*,
No. 1:20-cv-01128 (TNM), 2022 WL 1081097 (D.D.C. Apr. 11, 2022) ................................... 13

*Loving v. U.S. Dep't of Def.*,
550 F.3d 32 (D.C. Cir. 2008) ................................................................................ 14

*Mayer Brown LLP v. I.R.S.*,
562 F.3d 1190 (D.C. Cir. 2009) ............................................................................. 4

*Mead Data Ctr. v. U.S. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ............................................................................. 13

*Milner v. Dep't of Navy*,
562 U.S. 562 (2011) ...................................................................................... 5

* *New York Times Co. v. U.S. Secret Serv.*,
No. 17 CIV. 1885 (PAC), 2018 WL 722420 (S.D.N.Y. Feb. 5, 2018) ............................... *passim*

*Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Prot.*,
Civ. A. No. 04-00377, 2006 WL 1826185 (D.D.C. June 30, 2006) ................................... 5

*Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
777 F.3d 518 (D.C. Cir. 2015) .............................................................................. 4

*Pub. Emps. For Envt'l Resp. v. U.S. States Section, Int'l Boundary & Water Comm'n*,
740 F.3d 195 (D.C. Cir. 2014) ......................................................................... 4, 5, 6

*Reed v. N.L.R.B.*,
927 F.2d 1249 (D.C. Cir. 1991) ......................................................................... 9, 10

*Sack v. U.S. Dep't of Def.*,
823 F.3d 687 (D.C. Cir. 2016) ............................................................................. 4

*SafeCard Servs., Inc v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) ....................................................................... 3, 10

*Schaerr v. U.S. Dep't of Just.*,
69 F.4th 924 (D.C. Cir. 2023) ............................................................................. 3

*Shapiro v. U.S. Dep't of Just.*,
No. 12-cv-0313, 2020 WL 3615511 (D.D.C. July 2, 2020) ............................................ 4

*Sussman v. U.S. Marshalls Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) .......................................................................... 14

*Touarsi v. U.S. Dep't of Just.*,
    78 F. Supp. 3d 332 (D.D.C. 2015) ................................................................................. 12

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
    510 U.S. 487 (1994) ......................................................................................................9, 11

* *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
    489 U.S. 749 (1989) ................................................................................................ *passim*

*U.S. Dep't of State v. Wash. Post Co.*,
    456 U.S. 595 (1982) ...................................................................................................... 8, 9

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ........................................................................................ 3

**Statutes**

5 U.S.C. § 552(a)(4)(B) ....................................................................................................... 3

5 U.S.C. § 552(a)(8)(i)(I) ................................................................................................... 12

5 U.S.C. § 552(b) ................................................................................................................ 13

* 5 U.S.C. § 552(b)(6) ......................................................................................................... 8

* 5 U.S.C. § 552(b)(7)(C) ................................................................................................... 9

* 5 U.S.C. § 552(b)(7)(E) ................................................................................................... 4

* 5 U.S.C. § 552(b)(7)(F) ................................................................................................. 4, 7

**INTRODUCTION**

In this FOIA lawsuit, Plaintiff is challenging redactions that, if removed, would reveal the U.S. Secret Service's ("USSS") manpower projections and allocations for the protection of potential or actual protectees.  Release of this information, which includes identifying information of potential or actual protectees, would allow adversaries to better identify and locate high-priority targets, as well as circumvent USSS protections, risking grave harm to protectees, their families, and the agents assigned to their details.  Disclosure would also invade the personal privacy of protectees, as protectees and their families are likely to be subjected to media attention and harassment, with no attendant public interest.  This sensitive information is therefore statutorily protected under FOIA Exemptions 6 and 7(C) (personal privacy), 7(F) (law enforcement records), and 7(E) (law enforcement techniques and methods).  This Court should thus grant summary judgment in the Government's favor.

**BACKGROUND**

Plaintiff Judicial Watch submitted the FOIA request at issue in this case on May 2, 2023, seeking from the USSS certain records related to "the provision or potential provision of [Secret Service] protection to Navy Joan Roberts, the daughter of Hunter Biden and granddaughter of President Joe Biden."  Def.'s Statement of Material Facts ("SMF") ¶ 1.  After USSS notified Plaintiff that no responsive records were located, Plaintiff filed an appeal and the instant suit challenging the "thoroughness of the search."  *Id.* ¶¶ 4-6 (quoting Tyrrell Decl. Ex. E at 2).  The USSS thereafter performed a revised search of records related to Plaintiff's FOIA request, and produced to Plaintiff all responsive, non-exempt records on November 9, 2023.  *Id.* ¶¶ 7-9.  Those records contained charts with "projections and allocations of Secret Service manpower numbers for the protection of then-President Trump, then-Presidential-candidate Biden, then-Vice-Presidential-candidate Harris, certain of their extended family members, and certain other federal officials," and were "prepared for the law enforcement purpose of protecting current and potential

1

future federal officials and their relatives from attack." Tyrrell Decl. ¶¶ 27, 28.  "The records were redacted to remove Secret Service manpower numbers, including references to how such Secret Service staffing would be allocated" as well as "personally identifying information of actual or potential protectees pursuant to FOIA Exemptions 6 and 7(C), (E), and (F)." *id.* ¶ 29.  The personally identifying information includes references to names, familial relationships, locations, birthdates, ages, and positions.  *Id*.

After conferring to narrow the scope of any potential dispute, Plaintiff's counsel advised defense counsel that it no longer sought to challenge the sufficiency of the search, but "continue[d] to believe there must be some portion of the chart that can be unredacted."  SMF Ex. 1; SMF ¶ 13.  The parties therefore agreed to a briefing schedule for cross-motions for summary judgment to address the propriety of the redactions.  *See* ECF No. 12 ¶ 4; 6/21/2024 Minute Order (adopting proposed briefing schedule).

## ARGUMENT

### I.   Legal Standard

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp*., 493 U.S. 146, 152 (1989) (citations omitted).  The FOIA statute's "nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency*, 493 U.S. at 152).  As such, the exemptions must be given "meaningful reach and application" to strike the appropriate balance "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency*, 493 U.S. at 152 (citations omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Leopold v. CIA*, 106 F. Supp. 3d 51, 55 (D.D.C. 2015). A court reviews an agency's response to a FOIA request *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). Courts afford "substantial weight to an agency's affidavit," and "must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with 'reasonably specific detail'; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. U.S. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). This is not a high bar. "An agency's justification is sufficient if it is logical or plausible." *Id.* (citation omitted); *see also SafeCard Servs., Inc v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agencies' FOIA declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims.'" (citation omitted)).

## II.    The Redacted Information is Covered by Exemptions 6, 7(C), (E), and (F).

The Government properly withheld manpower information and potential or actual protectee information based on FOIA Exemption 6 and Exemptions 7(C), (E), and (F). These redactions are based on the same basic premise: release of USSS staffing projections for, and identification of, potential or actual protectees would enable adversaries to more effectively identify potential targets; determine whether they have USSS protection; estimate the extent of any protection; incorporate that information into tactical plans to thwart USSS protective techniques; and endanger protectees, their families, and Secret Service Personnel. Furthermore, release of identifying information would also constitute a clearly unwarranted invasion of personal privacy and risk subjecting such individuals to harassment, media attention, or unwanted contact. These risks are real and foreseeable, and the Court should therefore affirm the withholdings.

A.  **The Manpower Information and Identifying Information Fall Under Exemptions 7(E) and (F).**

FOIA Exemption 7(E) exempts records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  For Exemption 7(E) to apply, the records at issue must have been complied for law enforcement purposes.  *See Pub. Emps. For Envt'l Resp. v. U.S. States Section, Int'l Boundary & Water Comm'n* ("*PEER*"), 740 F.3d 195, 202 (D.C. Cir. 2014) (citing 5 U.S.C. § 552(b)(7)).  Documents are compiled for law enforcement purposes if they were, for example, "created to prevent crime and keep people safe," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 523 (D.C. Cir. 2015), "deter illegal activity and ensure national security," *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016), or otherwise "establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law," *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)).  Agencies face a "low bar" in justifying nondisclosure under Exemption 7(E).  *Id.* at 42; *Shapiro v. U.S. Dep't of Just.*, Civ.  A No. 12-cv-0313 (BAH), 2020 WL 3615511, at *40 (D.D.C. July 2, 2020) *aff'd in part, remanded in part*, 40 F.4th 609 (D.C. Cir. 2022).  The exemption applies so long as release of the information "could *increase the risks* that a law will be violated."  *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

Exemption 7(F) similarly protects "records or information compiled for law enforcement purposes [that] . . . could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  The scope of Exemption 7(F) is "similarly broad" as Exemption 7(E), and "[d]isclosure need not *definitely* endanger life or physical safety; a reasonable

4

expectation of endangerment suffices." *PEER*, 740 F.3d at 205 (citation omitted).  Courts largely defer to the agency's assessment of danger.  *See id.*; *Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Prot.*, Civ. A. No. 04-00377, 2006 WL 1826185, at *9 (D.D.C. June 30, 2006).

As an initial matter, the records here at issue were prepared for a law enforcement purpose. As USSS Declarant Kevin L. Tyrell explains, "[t]he records were prepared for the law enforcement purpose of protecting current and potential future federal officials and their relatives from attack." Tyrrell Decl. ¶ 28.  This plainly meets the criteria of Exemptions 7(E) and (F).  *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 525 F. Supp. 3d 181, 189 (D.D.C. 2021) ("*CREW*") (finding that "there can be no doubt . . . that the Secret Service acts with a law enforcement purpose when it protects federal officials from attack, even though no investigation may be ongoing" in reference to records containing "the number of Secret Service personnel who accompanied" President Trump on a trip (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 583 (2011) (Alito, J., concurring))); *New York Times Co. v. U.S. Secret Serv.*, No. 17 CIV. 1885 (PAC), 2018 WL 722420, at *1, 4 (S.D.N.Y. Feb. 5, 2018) ("*NYT*") (recognizing similar in finding exempt records of Secret Service travel related to presidential campaign flights).

**Manpower Information.** As Mr. Tyrell explains, release of manpower numbers and allocations would disclose law enforcement records that risk circumvention of the law and endanger individuals' lives or physical safety:

> The redacted manpower information would reveal actual or projected Secret Service staffing numbers and allocations for direct protection of the President, Vice President, their extended families, and other government officials. This information is not generally known to the public and could provide a significant tactical advantage to those seeking to harm a Secret Service protectee or agents.  With this information, adversaries could more effectively estimate the number of Secret Service personnel staffed to a protectee and better plan, disable, or circumvent the

Secret Service protective techniques and endanger the life and physical safety of protectees and Secret Service personnel.

Tyrrell Decl. ¶ 31.

Courts have previously applied Exemptions 7(E) and (F) to the withholding of manpower information based on these same concerns.  As to Exemption 7(E), this Court found the USSS's explanation—"that prospective wrongdoers equipped with data about the Secret Service manpower strength protecting President Trump in Scotland could better estimate the number of Secret Service personnel staffed on other Secret Service protectees' trips of similar size and scale going forward"—was "a logical and straightforward explanation of why revealing the number of Secret Service personnel on the trip 'might increase the risk' of future crimes targeting the Secret Service and its protectees."  *CREW*, 525 F. Supp. 3d at 190 (quoting *PEER*, 740 F.3d at 205) (cleaned up).  The Southern District of New York reached a similar conclusion, based on the USSS's explanation that "disclosure of agent staffing on 2016 campaign flights would reveal information about the Service's future flight operations," as they "would clearly show the manpower present to conduct direct protection in such situations," and "enabl[e] adversaries to have advance notice of protective operational measures in place in a particular situation."  *NYT*, 2018 WL 722420, at *7-8.

The case for applying Exemption 7(E) is even stronger here.  *CREW* and NYT dealt with historic staffing numbers for specific, since-elapsed trips.  Nevertheless, those courts concluded that such information could be used by bad actors to estimate staffing in other contexts.  *See CREW*, 525 F. Supp. 3d at 191; *NYT*, 2018 WL 722420, at *9.  The redacted information here, by contrast, projects routine, continuing staffing allocations for each potential or actual protectee. This data is even more likely to "enable an adversary to estimate the number of agents that would be staffed [to a protectee]" at any given time, *NYT*, 2018 WL 722420, at *9; *see CREW*, 525 F.

6

Supp. 3d at 191, and use those estimates to "plan, disable, or circumvent the Secret Service protective techniques," Tyrrell Decl. ¶ 31; *see also id.* ¶ 33 ("The more information that is disclosed about the resources of Secret Service protective services and the way those resources are deployed across protectees, the more likely it is that bad actors will attempt to use that information to circumvent protection."). As such, the redacted manpower information falls under Exemption 7(E).

It also falls under Exemption 7(F). The USSS has demonstrated that the risk of legal circumvention "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). As explained, "the Secret Service investigates threats on a daily basis from individuals and groups that seek to do harm to protectees," and therefore the release of information that could enable adversaries to more effectively "disable" or "circumvent the Secret Service protective techniques" would "endanger the life and physical safety of protectees and Secret Service personnel." Tyrrell Decl. ¶¶ 31, 33. This justification was similarly deemed sufficient to invoke Exemption 7(F) in *CREW* and *NYT*. *See CREW* 525 F. Supp. 3d at 192 (finding "intuitive" explanation that "if adversaries could more effectively plan, disable, or circumvent the Secret Service protective techniques, the expected result would be to endanger the lives or physical safety of individuals under the protection of the Secret Service as well as the lives and physical safety of Secret Service personnel" (cleaned up)); *NYT*, 2018 WL 722420, at *11 (finding "risk of danger" to protectees and assigned USSS agents "since the Service agents protect high priority targets").

Consistent with prior caselaw, this Court should thus find that the manpower information was properly withheld under Exemptions 7(E) and (F).

**Identifying Information.** The same logic applies to the identifying information of potential or actual protectees. As to Exemption 7(E), disclosing information, such as "names, ages, birthdates, familial relationships, and locations," of potential or actual protectees "would enable adversaries to identify potential targets[,] . . . better determine whether a potential target does or does not have Secret Service protection, and incorporate that information into their tactical plans." Tyrrell Decl. ¶ 32. It would also "make it easier for adversaries to locate a potential target and assess their vulnerability to an attack." *Id.* As such, disclosure presents "a possible security risk" for potential protectees and any USSS agents protecting them. *Blackwell*, 646 F.3d at 40.

Disclosure would also "better enable adversaries to plan, disable, or circumvent the Secret Service protective techniques" which could "endanger the life and physical safety of protectees, their relatives, other government officials, and Secret Service personnel." Tyrrell Decl. ¶ 32. This risk of harm warrants application of Exemption 7(F). *See, e.g.*, *Adionser v. Dep't of Just.*, 33 F. Supp. 3d 23, 28 (D.D.C. 2014) ("exemption has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester" where "personal safety" is at stake (citations omitted)).

### B. The Identifying Information Falls Under Exemptions 6 and 7(C).

The identifying information of potential or actual protectees was also properly withheld under Exemptions 6 and 7(C). Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599-600 (1982) ("[T]he primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters." (citation omitted)). The term "similar files" is accorded a "broad[]" meaning, and "the propriety of an agency's decision to withhold information does not 'turn upon the label of the file which contains the damaging information.'" *Jud. Watch, Inc. v.*

*Food & Drug Admin*. ("*FDA*"), 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Wash. Post Co.,* 456 U.S. at 601); *see Reed v. N.L.R.B*., 927 F.2d 1249, 1251 (D.C. Cir. 1991) ("[T]he Supreme Court has instructed lower courts to construe the phrase 'similar files' broadly, and to apply the exemption to any 'Government records on an individual which can be identified as applying to that individual.'" (quoting *Washington Post Co*., 456 U.S. at 601-02)).  Exemption 6 applies to "not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy," *FDA*, 449 F.3d at 152 (cleaned up) , and to "files containing private information on multiple individuals," *Jud. Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012).

Similarly, Exemption 7(C) applies to "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  While an individual must have a "substantial" privacy interest in the records to prevent disclosure, that term "means less than it might seem.  A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv*., 386 F. Supp. 3d 34, 43 (D.D.C. 2019) (citation omitted).

Where a record meets the threshold requirements of Exemption 6 or Exemption 7(C), an agency must then balance the individual's right to privacy against the public's interest in disclosure. *See U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 n.6 (1994).  In doing so, courts consider "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Id.* at 495 (quoting *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 775 (1989)) (emphasis omitted).  Because the analyses under Exemptions 6 and 7(C) are

similar, case law pertaining to one of the privacy exemptions is often germane in considering the other.   *See e.g.*, *Reed*, 927 F.2d at 1251.   However, Exemption 7(C) tilts more in favor of nondisclosure.   *See Reps. Comm.*, 489 U.S. at 756 ("Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' [but] the adverb 'clearly' is omitted from Exemption 7(C).").

Exemptions 6 and 7(C) apply to the identifying information contained in the redacted records.   *See, e.g.*, *SafeCard Servs. Inc.*, 926 F.2d at 1206 (adopting categorical rule that agency may withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity."); *FDA*, 449 F.3d at 152-53 ("[I]ndividuals have a privacy interest in the nondisclosure of their names and addresses . . . ." (cleaned up)); *Boehm v. FBI*, 948 F. Supp. 2d 9, 30 (D.D.C. 2013) (recognizing privacy interest in information "including names, addresses, . . . [and] ages").

Releasing such identifying information, including as to those who—as relevant to the subject of Plaintiff's FOIA request—"are not government officials," and are minors, Tyrrell Decl. ¶ 37, would constitute a clearly unwarranted invasion of personal privacy.   Disclosure could be used to target these individuals for harassment, media attention, or unwanted contact by virtue of their inclusion on the projection charts and relation to executive officials.   *See id.*; *Jud. Watch,* 875 F. Supp, 2d at 46 ("A substantial privacy interest exists in avoiding embarrassment, retaliation, or harassment and intense scrutiny by the media that would likely follow disclosure."); *Humane Soc'y of U.S.*, 386 F. Supp. 3d at 43 (privacy interest applies to familial relationship, including "marital status, legitimacy of children, identity of fathers of children" (citation omitted)).   As the USSS Declaration acknowledges, this risk is "substantial," as "relatives of executive officials and others potentially subject to Secret Service protection are often subject to harassment, unwanted contact,

and outsized media attention." Tyrrell Decl. ¶ 37.  Indeed, the subject of Plaintiff's FOIA request was subject to significant media attention during the summer of 2023, when Plaintiff submitted its FOIA request.  *Id.*  Moreover, and as described *supra* at 8, disclosure of identifying information regarding potential or actual USSS protectees would subject them, and others, to substantial risk of physical harm.  *See* Tyrrell Decl. ¶ 33 (disclosure would be "reasonably expect[ed]" to "endanger the lives or physical safety of individuals under the protection of the Secret Service, their relatives, government officials, as well as the lives and physical safety of Secret Service personnel and others.").  This too establishes a privacy interest in the withheld information.  *See Ctr. for Med. Progress v. U.S. Dep't of Health & Hum. Servs.*, No. CV 21-642 (BAH), 2022 WL 4016617, at *14 (D.D.C. Sept. 3, 2022)*, recons. denied,* 2022 WL 17976633 (D.D.C. Nov. 16, 2022) (finding "substantial privacy interest in the withheld [identifying] information due to the justified and articulable risk of harassment and violence").  As such, the Agency properly "concluded that disclosure would result in a clearly unwarranted invasion of personal privacy." Tyrrell Decl. ¶ 37.

The Secret Service also appropriately "determined that the[se] privacy interests clearly outweigh any public interest in disclosure of such personal information," because disclosure "would not serve the 'core purpose' of FOIA, *i.e.*, it would not disclose information about 'what the government is up to.'" Tyrrell Decl. ¶ 37 (quoting *Reps. Comm.*, 489 U.S. at 775).  Disclosing personal information of potential or actual USSS protectees, including non-government officials and minors, *id.*, would not significantly increase the public's understanding of the USSS's performance of its mission or operations.  There is little public interest in the sorts of identifying information contained in the documents here at issue.  *See, e.g.*, *Fed. Lab. Rels. Auth.*, 510 U.S. at 497 (finding public interest in employee addresses "negligible" because "it would not appreciably

further 'the citizens' right to be informed about what their government is up to" (quoting *Reps. Comm.,* 489 U.S. at 773)); *FDA*, 449 F.3d at 153 ("private interest in avoiding harassment or violence tilts the scales" against disclosure of "names and addresses" where "opposing public interest in knowing these names and addresses is not immediately apparent"); *Ctr. for Med. Progress*, 2022 WL 4016617, at *15 ("strong privacy interests . . . in avoiding physical danger and harassment . . . clearly outweigh the minimal public benefit, if any, that can be gained from revealing their identities" (citations omitted)); *Touarsi v. U.S. Dep't of Just.*, 78 F. Supp. 3d 332, 347 (D.D.C. 2015*)* ("FOIA's general goal of government oversight is insufficient to obtain the names of individuals contained in law enforcement records.").

Accordingly, the Government properly withheld identifying information under Exemptions 6 and 7(C).

### III.   The Government Complied with the Foreseeable Harm Standard in the FOIA Improvement Act of 2016.

The FOIA Improvement Act of 2016 requires that agencies "withhold information . . . only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)." 5 U.S.C. § 552(a)(8)(i)(I). The Government's declaration readily meets this standard. As explained earlier, the USSS "protects high-priority targets and investigates threats on a daily basis from individuals and groups that seek to do harm to protectees." Tyrrell Decl. ¶ 33. The redacted manpower numbers and allocations "could provide a significant tactical advantage to those seeking to harm a Secret Service protectee or agents" and "better plan, disable, or circumvent the Secret Service protective techniques and endanger the life and physical safety of protectees and Secret Service personnel." *Id.* ¶ 31. Similarly, release of identifying information of current or potential protectees would allow such bad actors or other adversaries "to incorporate that information into their tactical plans" and "better . . . plan, disable,

or circumvent the Secret Service protective techniques and endanger the life and physical safety of protectees, their relatives, other government officials, and Secret Service personnel." *Id.* ¶ 32. And "the more information that is disclosed about the resources of Secret Service protective services and the way those resources are deployed across protectees, the more likely it is that bad actors will attempt to use that information to circumvent protection." *Id.* ¶ 33.

Similarly, protectees' privacy interests will be foreseeably harmed because disclosure is "reasonably expected to result in the targeting of such individuals for harassment, media attention, and unwanted contact[.]" *Id.* ¶ 37. These representations satisfy the limited burden applicable here. *See Louise Trauma Ctr LLC v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-01128 (TNM), 2022 WL 1081097, at *7 (D.D.C. Apr. 11, 2022) (recognizing that "'predicted results of disclosure [*i.e.*, the potential for harassment] are exactly what' Exemption 6 seeks to prevent," and thus finding "risk of foreseeable harm" (quoting *Ecological Rts. Found v. EPA*, 541 F. Supp. 3d 34, 65-66 (D.D.C. 2021))); *Reps. Comm. for Freedom of the Press v. U.S. CBP*, 567 F. Supp. 3d 97, 128 (D.D.C. 2021) (because "an agency must show some risk of circumvention before withholding material under 7(E) . . . . [t]he exemption's text thus already forces the agency to show some risk of harm.").

## IV.    The Government Released All Reasonably Segregable Information.

FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions." *Mead Data Ctr. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Kurdyukov v. U.S. Coast Guard*, 578 F. Supp. 2d 114, 128 (D.D.C. 2008).

The Government has satisfied this standard.  It determined that "[t]here is no additional reasonably segregable, non-exempt information that could be released without potentially

compromising Secret Service law enforcement techniques or the safety of protectees, their family members, and Secret Service personnel." Tyrrell Decl. ¶ 39.  Its redactions are thus "narrowly tailored to withhold as little information as possible without causing harm protected by the relevant FOIA exemptions." *Id.*  The released documents themselves also demonstrate the Secret Service's good-faith efforts to provide all reasonably segregable information.  For example, the Agency did not redact references to "POTUS" or "FLOTUS," based on its assessment that "it is well known that the President and First Lady have Secret Service protection" and thus "disclosure . . . would not present the same safety and security concern as the other redacted information." *Id.*  By contrast, other officials' or family members of officials' protectee status may not be generally known, including because they "may be entitled to protection on a discretionary basis or may decline their statutorily authorized protection." *Id.*  Such good-faith representations entitle the Government to summary judgment on this issue.  *See Sussman v. U.S. Marshalls Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."); *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the [affidavit] and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination.").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor and dismiss the case with prejudice.

Dated: August 9, 2024                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Laura B. Bakst*
Laura B. Bakst
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 514-3183
Email: Laura.b.bakst@usdoj.gov

*Counsel for Defendant*